IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 25-57-1 |
| MD NURUL HASAN | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant MD Nurul Hasan ("Hasan") could not fairly win an election for mayor of Millbourne Borough, so he tried to steal the election through an elaborate voter registration fraud and voter fraud scheme. While serving on Millbourne's Borough Council, Hasan conspired with two other councilmembers to register dozens of non-Millbourne residents as Millbourne voters, apply for mail-in ballots to be addressed to those newly-registered voters at Millbourne locations, steal the ballots out of the Millbourne mailboxes, write in votes for Hasan to be mayor, and then mail the ballots back to the Delaware County Board of Elections.

Hasan and his co-conspirators' efforts failed, as Hasan still lost the general election by 27 votes, but their crimes caused immeasurable harm on the integrity of the electoral process and the public's faith in the fairness of elections. As the Delaware County Election Director stated in his letter to the Court, the conspirators' actions "gave fodder to those who seek to sow mistrust in the electoral franchise" and "may well be cited in the future by those who lose in a close contest, even when there are no indications of fraud." The County Election Director is urging this Court to "send a clear message that such fraud – such crimes against our electoral franchise – will be detected, will be investigated and will be punished." The government joins that request.

1

The government also agrees with the Presentence Investigation Report's calculations that Hasan's total offense level is 15 and his criminal history category is I, which means his sentencing range under the United States Sentencing Guidelines is 18-24 months' imprisonment. For reasons set forth below, a sentence within that range would best serve the sentencing factors set forth in 18 U.S.C. § 3553(a).

I.      STATEMENT OF THE CASE

   A.      Procedural History

On February 18, 2025, a federal grand jury sitting in the Eastern District of Pennsylvania returned a 33-count indictment against Hasan, MD Munsur Ali, a/k/a "Mithu," and MD Rafikul Islam, a/k/a "Mohammad Rafikul Islam," a/k/a "Jibon." The indictment charged Hasan with one count of conspiracy, in violation of 18 U.S.C. § 371 (Count 1), sixteen counts of providing and aiding and abetting the providing of false information in registering to vote, in violation of 52 U.S.C. § 10307(c) and 18 U.S.C. § 2 (Counts 2 through 17), and sixteen counts of voter registration fraud and aiding and abetting voter registration fraud, in violation of 52 U.S.C. § 20511(2)(A) and 18 U.S.C. § 2 (Counts 18 through 33).

On April 1, 2025, Hasan appeared before the Honorable Harvey Bartle III, United States District Judge for the Eastern District of Pennsylvania, and pleaded guilty to all 33 charges, pursuant to a written plea agreement with the government.

   B.      Offense Conduct

At all times relevant to this case, Millbourne was a municipality located in Delaware County, Pennsylvania, with an area of approximately 0.1 square miles and a population of slightly more than 1,200. Millbourne had a municipal government consisting of a mayor, five

borough councilmembers, a tax collector, a police chief, and some administrative personnel. The borough council had a president and vice president. The mayor, councilmembers, and tax collector were all elected officials who serve four-year terms. Nearly all of Millbourne's registered voters were members of one political party, so if a candidate for office were to win that party's primary, that candidate was extremely likely to win the general election.

In 2021, Millbourne held elections for mayor and other offices. At the time, defendant Hasan was a resident of Millbourne and a member of the Millbourne Borough Council, as were his co-defendants, MD Munsur Ali, a/k/a "Mithu" ("Ali") and MD Rafikul Islam, a/k/a "Mohammed Rafikul Islam," a/k/a "Jibon," ("Islam"). Hasan, who was vice president of the council, entered the majority party's primary election for mayor and was defeated by a vote count of approximately 138 to 120. Afterward, Hasan decided to run as a write-in candidate for mayor in the general election. Ali and Islam agreed to support Hasan's write-in candidacy.

In Pennsylvania, registering to vote permitted a registrant to vote in all upcoming elections for both federal as well as non-federal candidates for as long as the registration was valid. The Office of Pennsylvania's Secretary of State ("SOS") oversaw elections in the Commonwealth and operated a statewide database of all registered voters. The SOS's Office also operated an online voter registration website, which was accessible to the public (the "PAOVR" website). Any person who accessed the PAOVR website could either submit a new voter registration application or edit an existing voter's registration information as long as the person knew certain personal identification information about the voter. A person who provided such information about a voter on the PAOVR website could change the voter's name, address, and/or party affiliation, and/or request a mail-in or absentee ballot.

The Millbourne primary elections were held on May 18, 2021. At the time, there were approximately 549 registered voters in Millbourne. By the time the general election was held on November 2, 2021, there were approximately 578 registered voters in Millbourne. Most of the additional registered voters were people who did not live in Millbourne and had previously been registered to vote in locations outside of Millbourne, but whose voter registration addresses had been changed to Millbourne addresses by Hasan through the PAOVR website. Among the non-Millbourne residents whose voter registration addresses were changed to locations in Millbourne in October 2021 were the 16 individuals identified as Persons A through P in the indictment.[1]

From at least May 2021 until February 2025, Hasan conspired with Ali, Islam, and other persons to: (a) knowingly and willfully give false information as to the name and address of voters to establish their eligibility to register and vote in elections from Millbourne, including elections for federal office; and (b) commit voter registration fraud by the procurement and submission of voter registration applications that were known by the defendants to be materially false, fictitious, and fraudulent under the laws of Pennsylvania.

As part of that conspiracy, the defendants agreed to attempt to steal the 2021 general election for mayor of Millbourne for Hasan by (a) obtaining personal identification information of non-Millbourne residents, such as their names, addresses, dates of birth, and driver's license numbers; (b) using the personal identifying information to access the PAOVR website and change the voter registration addresses for those non-Millbourne residents to locations within Millbourne; (c) using the PAOVR website to request that mail-in or absentee ballots for those

---

[1] The government has identified these individuals to defense counsel and the Probation Officer and can similarly identify them for the Court upon request.

non-Millbourne residents be sent to addresses accessible by one or more of the defendants; (d) retrieving the ballots from the Millbourne mailboxes; (e) impersonating the voters and fraudulently casting write-in votes for Hasan to be mayor; (f) enclosing the fraudulently completed ballots in envelopes and forging the voters' signatures on the envelopes; and (g) submitting the ballots in their envelopes to the Delaware County Board of Elections.

To further this conspiracy, Hasan and Ali contacted friends and acquaintances whom they knew did not live in Millbourne; told these non-Millbourne residents that Hasan was running for mayor in Millbourne; asked if they could register the non-Millbourne residents to vote in Millbourne and then cast mail-in ballots for Hasan for mayor. Hasan and Ali also persuaded many of their non-Millbourne friends and acquaintances to show them their driver's licenses or other documents containing their names, addresses, dates of birth, and other personal identification information, so that Hasan and Ali could register them to vote in Millbourne. During many of these conversations, Hasan and Ali told their non-Millbourne friends and acquaintances that they would not get in trouble as long as they did not vote in another election in November 2021. Hasan and Ali also conspired and agreed to use personal identifying information for other non-Millbourne residents that they had obtained from other sources, such as Hasan's business, to register those nonresidents as Millbourne voters without the knowledge of those non-residents. Among the non-Millbourne residents from whom Hasan and Ali obtained personal identification information were the individuals identified as Persons A through P in the indictment.

Hasan then used that information to register the non-Millbourne residents as Millbourne voters through the PAOVR website. Once Hasan had successfully registered non-Millbourne

residents as Millbourne voters, he used the PAOVR website to request that mail-in ballots be sent to locations in Millbourne that he and his co-conspirators could access, including to his residence, a second property he owned in Millbourne, and the Millbourne residences of Ali and Islam. After the Delaware County Board of Elections mailed ballots to those locations, the conspirators collected the ballots, opened them, wrote in Hasan's name for mayor, enclosed the ballots in special envelopes, and forged the voters' signatures on the envelopes or had the non-Millbourne residents sign the ballot in their presence. before returning them to the Board of Elections.

In total, Hasan and his co-conspirators falsely registered nearly three dozen non-Millbourne residents as Millbourne voters and cast ballots for those non-Millbourne residents in the 2021 general election for mayor of Millbourne. Their efforts to steal the election were ultimately unsuccessful as Hasan still lost the general election by a vote of approximately 165 to 138.

By registering non-residents as Millbourne voters in 2021, Hasan and his co-conspirators made them eligible to vote in future elections held in part for the purpose of electing candidates for federal office, including the offices of President, Vice President, presidential elector, member of the United States Senate, and member of the United States House of Representatives. By doing this, Hasan and his co-conspirators knowingly and willfully deprived, defrauded, and attempted to deprive and defraud the residents of the Commonwealth of Pennsylvania of a fair and impartially conducted election process.

C. **<u>Relevant Conduct</u>**

Hasan did not cause fraudulent voting in a federal election because there were no candidates for federal office on the November 2021 ballot. He did, however, commit state voter fraud, which can be considered by this Court as relevant conduct for sentencing purposes. Specifically, Hasan and his co-defendants fraudulently applied for ballots in the November 2021 election on behalf of other people; fraudulently completed some of those ballots by casting votes for Hasan for mayor; forged the non-residents' signatures on the ballot envelopes; and mailed the ballots to the Delaware County Board of Elections in an attempt to steal the Millbourne mayoral election.

Additionally, although Hasan and his co-defendants were not charged with mail theft, in violation of 18 U.S.C. § 1708, they did illegally steal election ballots from the residential mailboxes outside of some Millbourne homes. Similarly, although Hasan and his co-defendants were not charged with identify theft, they did use personal identification information of some non-Millbourne residents without their consent as part of their voter registration fraud scheme.

Moreover, although Hasan was not charged with obstruction of justice, in violation of 18 U.S.C. § 1512, he did urge at least one of the non-Millbourne residents whose voter registrations Hasan had illegally switched to lie to FBI agents. Specifically, after the person identified as "Person O" in the indictment told Hasan that he had been approached by FBI agents, Hasan told Person O to tell investigators that the reason he registered to vote in Millbourne for the 2021 general election was because, in November 2021, Person O and his family were thinking of moving to a Millbourne property owned by Person O's uncle because it was closer to the train station and his children's day care than their residence in nearby Upper Darby. Those statements

7

were lies, and Person O actually made those false representations to the FBI in January 2025 before retracting them and admitting that he was only lying at the direction of Hasan.

## II.     SENTENCING CALCULATION

### A.     Statutory Maximum Sentence

Hasan is facing the following total statutory maximum sentence: Count 1 (conspiracy, in violation of 18 U.S.C. § 371), 5 years' imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment; Counts 2-17 (giving false information in registering to vote, in violation of 52 U.S.C. § 10307(c)), 5 years' imprisonment, a 3-year period of supervised release, a $10,000 fine, and a $100 special assessment; and Counts 18-33 (voter registration fraud, in violation of under 52 U.S.C. 20511(2)(A)), 5 years' imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment.

In total, therefore, Hasan is facing a maximum possible sentence of 165 years' imprisonment, 3 years' supervised release, a fine of $4,410,000, and a $3,300 special assessment.

### B.     Guidelines Calculation

The government agrees with the PSR's guidelines calculations. Under Section 3D1.2(d), all of the counts are grouped together for guidelines calculations purposes because the offense behavior was ongoing or continuous in nature.

The applicable guideline for violations of 52 U.S.C. § 10307(c) is U.S.S.G. § 2H2.1. The base offense level for Hasan's crimes is 12, pursuant to Section 2H2.1(a)(2), because Hasan obstructed an election by fraud and deceit. There are no specific offense adjustments. However, a four-level enhancement under Section 3B1.1(a) is applicable because Hasan was the organizer and leader of the criminal activity, and it involved five or more participants.

Hasan has objected to this enhancement on the grounds that his criminal activity "did not include more than five participants." PSR at 24. Instead, Hasan claims, his criminal activity "involved three co-conspirators, was not complex and lasted a short duration of time." *Id.* Hasan then asserts that the aggravated role enhancement should not apply, which means he would also be eligible for a two-level downward adjustment as a zero-point offender under Section 4C1.1. *Id.*

There are several flaws with Hasan's arguments. First, even if Hasan's criminal activity involved only three persons – himself, Ali, and Islam – Hasan would still get a two-level aggravated role enhancement, pursuant to Section 3B1.1(c), and this enhancement would make the defendant ineligible for a two-level downward adjustment under Section 4C1.1. Moreover, the defendant is incorrect about the number of participants in this election fraud scheme.

In addition to Hasan, Ali, and Islam, the participants included the following five people, each of whom is identified by his actual name in the PSR (p.25): (1) Millbourne's former tax collector, who has admitted to helping the defendants commit voter fraud in 2021; (2) "Person A," who knowingly let Hasan changed his address to a Millbourne location; (3) "Person C," who admitted providing personal information for himself and three family members to Hasan and Ali, so they could all be fraudulently registered to vote in Millbourne; (4) "Person H," who admitted that he provided Hasan with driver's licenses for himself and his wife so that Hasan could fraudulently register them to vote in Millbourne; and (5) "Person O," who admitted that, at Hasan's request, he agreed to try to register himself and his wife fraudulently as Millbourne residents. "Participant" is not the same thing as co-defendant. The guidelines define a "participant" as "a person who is criminally responsible for the commission of the offense, but

9

need not have been convicted." U.S.S.G. § 3B1.1. Since there were "five or more" participants in the criminal activity organized and led by Hasan, a four-level upward adjustment of Hasan's offense level to 16 is warranted here.

The PSR also correctly applied a two-level enhancement for obstruction of justice, pursuant to Section 3C1.1, based on Hasan's efforts to persuade Person O to lie to the FBI. That enhancement brings Hasan's total offense level to 18. He is entitled to a 2-level downward adjustment to 16 for acceptance of responsibility, pursuant to Section 3E1.1(a), and an additional 1-level reduction because he timely notified authorities of his own misconduct and his intention to plead guilty to the charges in this case. Accordingly, Hasan's total offense level is 15. He has zero criminal history points, so his criminal history category is I. Hasan's sentencing range, therefore, is 18-24 months under the guidelines.

### III.   ANALYSIS

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless of whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted), *cited favorably in United States v. Friedman*, 2011 WL 4470674, at *14 (3d

Cir. Sept. 28, 2011); *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006). In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the *Booker* decision. *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (*en banc*).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *Cooper*, 437 F.3d at 329; *see also Rita v. United States*, 127 S. Ct. 2456, 2468 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority."); *United States v. Schweitzer*, 454 F.3d 197, 205-06 (3d Cir. 2006).

As indicated above, the defendant's properly calculated advisory sentencing range under the current guidelines is 18-24 months' imprisonment. A sentence within that range would best serve the sentencing factors set forth in 18 U.S.C. § 3553(a). Those factors include (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to

11

provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[2]

Sections 3553(a)(4) and (a)(5) specifically direct the Court to consider the applicable guidelines and commentary, and Section 3553(a)(6) commands that the Court strive to avoid disparity in sentencing among similarly situated defendants. Collectively, therefore, they counsel for the imposition of a within-Guidelines sentence of 18-24 months' imprisonment. The nature and circumstances of the defendant's offenses, and Hasan's particular history and characteristics, also support the imposition of a sentence within that range.

Hasan's offenses in this case are extremely serious. By trying to steal an election, Hasan harmed more people than just his mayoral opponent and the actual Millbourne residents who voted for him. Hasan deprived each and every Millbourne resident of their right to free and fair elections. Hasan also indirectly harmed all Pennsylvanians and all Americans by giving people a reason to doubt the integrity of public elections. As the Delaware County election director wrote,

---

[2] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (quoting *United States v. Navedo-Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

"the electoral franchise must have the public's trust." PSR ¶ 29. "It is a trust that sometimes is maligned by bad actors who spread false claims about elections. It is a trust that other times, less frequently, is maligned by bad actors who violate election laws and commit fraud without concern for the ramifications. The crimes by defendants Hasan, Ali and Islam fall into this latter category." *Id.*

There are three factors that make Hasan's misconduct particularly egregious in this case. First, Hasan was not just an ordinary citizen who committed election crimes. He was the vice president of the Millbourne borough council and was viewed as one of the leaders of the local Bangladeshi-American community. People in and around Millbourne respected and admired Hasan, which is why several non-residents willingly gave him their personal identification information so that Hasan could fraudulently register them as Millbourne voters and cast fraudulent votes in their names.

Second, Hasan clearly knew that it was illegal for non-residents to vote in Millbourne because after he lost the primary, Hasan lodged a formal complaint with the Delaware County Board of Elections, supported by two of his co-conspirators, in which he asserted that 28 people who had voted for his opponent did not actually live in Millbourne so their votes should be thrown out (an allegation that was unprovable since all ballots cast were secret). Indeed, on October 22, 2021, after Hasan already had fraudulently registered dozens of non-Millbourne residents as Millbourne voters, two Delaware County police detectives went to Hasan's house and confronted him about it. One of the police detectives remembers reading Hasan "the riot act" and telling him to "knock off" any attempted voter fraud, and receiving an assurance from Hasan

that he would not solicit any votes from non-Millbourne residents. Less than two weeks later, Hasan committed the voter fraud described above.

Third, Hasan recently obtained the privilege of becoming a naturalized United States citizen, and when he did, Hasan took an oath to "support and defend the Constitution and laws of the United States of America against all enemies, foreign and domestic." Instead of defending the Constitution and laws of the United States, Hasan chose to undermine one of the most important rights protected by the Constitution and laws of this country: the right to self-determination embodied in free and fair elections. Hasan's offenses and his personal circumstances warrant a sentence of 18-24 months' imprisonment.

A within-guideline sentence would also promote respect for the law by making it clear that in this country, the right to free and fair elections is paramount. A sentence of 18-24 months' imprisonment would also provide just punishment for Hasan's crimes and serve the sentencing goal of general deterrence. It would send a message to other people in Hasan's position that severe consequences await them if they try to steal an election.

The sentencing goal of providing Hasan with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner, id. § 3553(a)(2)(D), is not applicable in this case.

## IV.  CONCLUSION

For all the foregoing reasons, the government respectfully requests that this Court sentence Hasan to a within-Guidelines sentence of 18-24 months' imprisonment. Additionally, the government asks this Court to order Hasan to pay a within-Guidelines fine and to perform a significant community service obligation as conditions of a 3-year term of supervised release.

        Respectfully submitted,
        DAVID METCALF
        United States Attorney

        */s/ Mark B. Dubnoff*
        MARK B. DUBNOFF
        Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Government's Change of Plea Memorandum was served by email upon:

Michael S. Dugan,
Counsel for the Defendant

Date: June 11, 2025                    */s/ Mark B. Dubnoff*
                                        MARK B. DUBNOFF